BORIS FELDMAN, State Bar No. 128838
boris.feldman@freshfields.com
DORU GAVRIL, State Bar No. 282309
doru.gavril@freshfields.com
DREW LIMING, State Bar No. 305156
drew.liming@freshfields.com
M. ABIGAIL WEST, State Bar No. 324456
abigail.west@freshfields.com
FRESHFIELDS BRUCKHAUS DERINGER US LLP
2710 Sand Hill Road
Menlo Park, CA 94025
Telephone: (650) 618-9250

*Attorneys for Defendants ACM Research, Inc.,*
*David Hui Wang, Lisa Feng, and Mark A. McKechnie*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JEFFREY KAIN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ACM RESEARCH, INC., DAVID HUI WANG, LISA FENG, and MARK A. MCKECHNIE,<br><br>Defendants. | Case No.: 3:20-CV-09241-VC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Date: July 8, 2021<br>Time: 2:00 p.m.<br>Location: Courtroom 4 - 17th Floor<br>Judge: Hon. Vince Chhabria |

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION……………………………………………………….... 1

STATEMENT OF ISSUES………………………………………………………………….......1

EXECUTIVE SUMMARY………………………………………………………………….... 1

BACKGROUND…………………………………………………………………………… 2

    A.  ACMR's Growing High-Tech Business……………………………………………… 2

    B.  ACMR Is Attacked Twice by a Short Seller……………………………………….... 2

    C.  Plaintiff's Lawsuit Parrots the Short-Seller Attack………………………………… 4

ARGUMENT………………………………………………………………………………… 4

  I.    PLAINTIFF FAILS TO ALLEGE SCIENTER………………………………………… 4

  II.   PLAINTIFF FAILS TO ALLEGE A FALSE OR MISLEADING STATEMENT ………….... 6

    A.  Complaint Relies Solely on J Capital's Short-Seller Attacks……………………………7

    B.  No Allegations That ACMR's Disclosures Were Inaccurate………………………….... 9

  III.  PLAINTIFF FAILS TO ALLEGE LOSS CAUSATION …………………………………… 13

CONCLUSION……………………………………………………………………………… 15

# TABLE OF AUTHORITIES

## CASES

*Bonanno v. Cellular Biomedicine Grp., Inc.*,
2016 U.S. Dist. LEXIS 119194 (N.D. Cal. Sep. 2, 2016)...................................................... 7

*Brody v. Transitional Hospitals Corp.*,
280 F.3d 997 (9th Cir. 2002)................................................................................................. 6

*Camp v. Qualcomm Inc.*,
2020 U.S. Dist. LEXIS 42079 (S.D. Cal. Mar. 10, 2020)........................................... 14

*City of Birmingham Ret. & Relief Sys. v. A.O. Smith Corp.*,
468 F. Supp. 3d 1048 (E.D. Wis. 2020)................................................................................ 7

*Cunningham v. Identiv, Inc.*,
716 F. App'x 663 (9th Cir. 2018)................................................................................... 13

*Curry v. Yelp Inc.*,
2015 U.S. Dist. LEXIS 159001 (N.D. Cal. Nov. 24, 2015).......................................... 5

*Curry v. Yelp Inc.*,
875 F.3d 1219 (9th Cir. 2017).........................................................................................5, 6

*Dean v. China Agritech, Inc.*,
2011 U.S. Dist. LEXIS 124264 (C.D. Cal. Oct. 27, 2011)........................................... 14

*Deason v. Super Micro Comput., Inc.*,
2017 U.S. Dist. LEXIS 162978 (N.D. Cal. Sep. 29, 2017)........................................... 10

*Diaz v. N. Dynasty Mins.*,
2018 U.S. Dist. LEXIS 237781 (C.D. Cal. Apr. 30, 2018)........................................ 7, 8

*Eng v. Edison Int'l*,
2018 U.S. Dist. LEXIS 43629 (S.D. Cal. Mar. 16, 2018)....................................... 13, 14

*Graves v. AECOM*,
2017 U.S. Dist. LEXIS 222299 (C.D. Cal. June 19, 2017).......................................... 4

*Grigsby v. BofI Holding, Inc.*,
979 F.3d 1198 (9th Cir. 2020)................................................................................................ 9

*Harris v. AmTrust Fin. Servs.*,
135 F. Supp. 3d 155 (S.D.N.Y. 2015).............................................................................7, 12

*Harris v. AmTrust Fin. Servs.*,
649 Fed. App'x 7 (2d. Cir. 2016) ..................................................................................... 7

*Hessefort v. Super Micro Comput., Inc.*,
    2020 U.S. Dist. LEXIS 59505 (N.D. Cal. Mar. 23, 2020)............................................................6

*In re Align Tech., Inc. Sec. Litig.*,
    2021 U.S. Dist. LEXIS 59783 (N.D. Cal. Mar. 29, 2021)..........................................................15

*In re China Valves Tech. Sec. Litig.*,
    2012 U.S. Dist. LEXIS 130284 (S.D.N.Y. Sep. 12, 2012)........................................................ 11

*In re Daou Sys. Inc., Sec. Litig.*,
    411 F.3d 1006 (9th Cir. 2005)..................................................................................................10

*In re Hansen Nat. Corp. Sec. Litig.*,
    527 F. Supp. 2d 1142 (C.D. Cal. 2007).................................................................................... 6

*In re Intrexon Corp. Sec. Litig.*,
    2017 U.S. Dist. LEXIS 26401 (N.D. Cal. Feb. 24, 2017)........................................................7

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
    910 F. Supp. 2d 561 (S.D.N.Y. 2012).....................................................................................7

*In re Nektar Therapeutics*,
    2020 U.S. Dist. LEXIS 122715 (N.D. Cal. July 13, 2020)....................................................... 8

*In re Oak Tech. Sec. Litig.*,
    1997 U.S. Dist. LEXIS 18503 (N.D. Cal. Aug. 1, 1997)......................................................... 5

*In re STAAR Co. Sec. Litig.*,
    Case No. 8:20-cv-01533-JVS-JDE (C.D. Cal. Jan. 15, 2021)...................................................7

*Irving Firemen's Relief & Ret. Fund v. Uber Techs.*,
    2021 U.S. App. LEXIS 14892 (9th Cir. May 19, 2021)......................................................1-2, 13

*Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*,
    2018 U.S. Dist. LEXIS 149393 (N.D. Cal. Aug. 31, 2018)...................................................... 4

*Jackson v. Fischer*,
    2015 U.S. Dist. LEXIS 32128 (N.D. Cal. Mar. 13, 2015).........................................................5

*Jui-Yang Hong v. Extreme Networks, Inc.*,
    2017 U.S. Dist. LEXIS 64297 (N.D. Cal. Apr. 27, 2017)................................................... 12, 13

*Mazzaferro v. Aruba Networks Inc.*,
    2015 U.S. Dist. LEXIS 15613 (N.D. Cal. Feb. 2, 2015)......................................................... 9

*McGovney v. Aerohive Networks, Inc.*,
    367 F. Supp. 3d 1038 (N.D. Cal. 2019)......................................................................... 11, 12, 13

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
   540 F.3d 1049 (9th Cir. 2008).................................................................4, 6, 10, 14

*Miao v. Fanhua, Inc.*,
   442 F. Supp. 3d 774 (S.D.N.Y. 2020)..........................................................7, 8

*Miller v. PCM, Inc.*,
   2018 U.S. Dist. LEXIS 148930 (C.D. Cal. Jan. 3, 2018).................................9

*Mulquin v. Nektar Therapeutics*,
   2020 U.S. Dist. LEXIS 244841 (N.D. Cal. Dec. 30, 2020)..........................7, 9

*NOVAGOLD Resources Inc. v. J Capital Research USA LLC*,
   Case No. 1:20-cv-02875-LDH-PK (E.D.N.Y. June 29, 2020)..........................3

*Or. Pub. Emples. Ret. Fund v. Apollo Grp. Inc.*,
   774 F.3d 598 (9th Cir. 2014)....................................................................6

*Par Inv. Partners, L.P. v. Aruba Networks, Inc.*,
   681 F. App'x 618 (9th Cir. 2017)............................................................9

*Philco Invs., Ltd. v. Martin*,
   2011 U.S. Dist. LEXIS 114314 (N.D. Cal. Oct. 4, 2011).............................5

*Prodanova v. H.C. Wainwright & Co., LLC*,
   993 F.3d 1097 (9th Cir. 2021)..................................................................5

*Rok v. Identiv, Inc.*,
   2017 U.S. Dist. LEXIS 1019 (N.D. Cal. Jan. 4, 2017)................................13

*Rok v. Identiv, Inc.*,
   2016 U.S. Dist. LEXIS 105761 (N.D. Cal. Aug. 10, 2016)...........................5

*Tadros v. Celladon Corp.*,
   738 F. App'x 448 (9th Cir. 2018)...................................................11, 12, 13

*Tellabs, Inc. v. Makor Issues & Rights*,
   551 U.S. 308 (2007)...............................................................................4

*Turner v. magicJack VocalTec, Ltd.*,
   2014 U.S. Dist. LEXIS 13293 (S.D.N.Y. Jan. 29, 2014)..............................10

*Union Asset Mgmt. Holding AG v. SanDisk Corp.*,
   2016 U.S. Dist. LEXIS 15090 (N.D. Cal. Jan. 22, 2016).............................10

*Veal v. LendingClub Corp.*,
   423 F. Supp. 3d 785 (N.D. Cal. 2019)..................................................12, 13

*Wachovia Equity Sec. Litig. v. Wachovia Corp.*,
    753 F. Supp. 2d 326 (S.D.N.Y. 2011).............................................................................6

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021)..........................................................................................4

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009)............................................................................................8

1

**NOTICE OF MOTION AND MOTION**

2

PLEASE TAKE NOTICE that at the time and place noted above, Defendants will and hereby

3

do move to dismiss Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure

4

12(b)(6), 8(a) and 9(b).

5

**STATEMENT OF ISSUES**

6

Does Plaintiff state a claim under §§ 10(b) or 20(a) of the Securities Exchange Act of 1934?

7

**EXECUTIVE SUMMARY**

8

The Amended Complaint fails to plead the particularized facts required to allege securities

9

fraud.  Instead, Plaintiff relies solely on unsubstantiated short-seller allegations.  Courts have

10

repeatedly rejected such short-seller attacks as the basis for securities lawsuits because short sellers

11

are interested in manipulating the stock price of their targets for their own benefit.  Plaintiff's

12

exclusive reliance on short-seller allegations means that he fails to plead the key elements of his

13

claim: falsity, scienter, and loss causation.

14

- **No Scienter.**  Plaintiff attempts to allege fraud without any facts showing fraudulent intent.

15

  Plaintiff's only scienter allegation in the *entire* Amended Complaint is a generic assertion that

16

  unnamed defendants must have been aware of the supposed "true facts" because they were

17

  high-level executives.  Courts repeatedly reject such bare, conclusory statements.  Indeed,

18

  defendants in these cases are always senior executives.

19

- **No Falsity.**  Plaintiff's sole reliance on a short-seller's attacks leaves him unable to plead the

20

  required "particularized facts."  In this district alone, Judges Seeborg, Orrick, and Gilliam

21

  have dismissed securities fraud complaints based on short sellers.  Plaintiff's challenge to

22

  ACMR's statements is based on supposition, not facts.  The information that Plaintiff claims

23

  was omitted was publicly disclosed in ACMR's own SEC filings.

24

- **No Loss Causation.**  Ironically for a "stock drop" lawsuit, Plaintiff cannot point to a

25

  statistically significant decline in ACMR's stock price.  Nor can Plaintiff meet the

26

  well-established requirement that the alleged decline in ACMR's stock price be caused by

27

  corrective disclosures.  The Ninth Circuit recently reiterated this requirement in *Irving*

28

  *Firemen's Relief & Ret. Fund v. Uber Techs.*, 2021 U.S. App. LEXIS 14892, at *11 (9th Cir.

May 19, 2021).  The fluctuations in ACMR's stock price were small, well within the day-to-day volatility of ACMR's stock price.  The stock bounced back within days.

Despite Plaintiff having filed this lawsuit six months ago and already amended once, the Amended Complaint is devoid of any particularized facts.  Rule 9(b) is designed to "prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis."  *Uber*, 2021 U.S. App. LEXIS 14892, at *13.  The Court should dismiss the Amended Complaint with prejudice.

## BACKGROUND

### A.  ACMR's Growing High-Tech Business

ACMR was founded in 1998 in Silicon Valley and supplies advanced technologies for the semiconductor industry.  Ex. A at 4, 76.  ACMR has been granted more than 350 patents in the United States, China, Japan, Singapore, South Korea, and Taiwan.  *Id.* at 5.  Currently, the Company's largest source of revenue is its single-wafer wet cleaning equipment, which computer chip manufacturers use to improve their processes and product yields.  *Id.*

Beginning in 2006, ACMR formed subsidiaries in China and South Korea to manage its growing overseas operations.  Ex. A at 76-77.  ACMR went public in the United States on November 3, 2017.  *Id.* at 77.  Since the IPO, ACMR's business has been successful.  Revenue grew from $74.6 million in 2018 to $107.5 million in 2019 to $156.6 million in 2020.  *Id.* at 73.

### B.  ACMR Is Attacked Twice by a Short Seller

ACMR was subjected to heightened levels of short-seller activity in 2020, which made its stock price more volatile.  ¶ 145.[1]  In fall 2020, ACMR's stock price continued to fluctuate day-to-day, such as when it experienced both a drop and a rise of over 8% on consecutive days.  *See* Ex. B at 3 (decrease of 8.93% on November 10, 2020 and rise of 8.35% on November 11, 2020).

On October 8, 2020, one such short seller, J Capital, posted online a so-called "report" criticizing ACMR's business.  Ex. C.  Like most short sellers, J Capital admitted that it may profit if it managed to drive down ACMR's stock price.  In its report, J Capital noted that it "may benefit from

---

[1] All references to "¶" are to the Amended Complaint for Violations of the Federal Securities Laws (ECF 49), filed on May 6, 2021.

1   short positions . . . and therefore stands to realize significant gains[.]"  *Id.* at 1.[2]

2       J Capital's report mischaracterized information from ACMR's U.S. public filings, as well as

3   information that ACMR's Chinese subsidiary had provided to regulators in China.  J Capital

4   disclaimed any responsibility for the accuracy of its accusations.  Ex. C at 1 ("J Capital Research

5   USA LLC makes no representation, express or implied, as to the accuracy, timeliness, or

6   completeness of any such information").  Its report was replete with caveats, such as "we believe,"

7   "we estimate," and "we think."  *Id.* at 1, 3-4, 10, 12-13, 15-16, 21-24, 29-30, 33, 38, 41-42.

8       Mainstream market analysts strongly disagreed with J Capital's opinion of ACMR.  *E.g.*, Exs.

9   D & E.  For example, one analyst concluded that "JCAP's report could potentially mislead investors."

10  Ex. D at 1.  Another warned that "much of [J Capital's] report was misleading, propaganda-driven,

11  and in some cases, erroneous."  Ex. E at 1.  Given J Capital's credibility deficit, its October 8 "report"

12  was greeted with a yawn: ACMR's stock price declined only 1.52% to $70.79.  Ex. B at 3.  The

13  following day, it rose 6.58%.  *Id.*

14      On November 4, 2020, ACMR disclosed its 3Q20 financials.  Revenue increased 43% year

15  over year.  Ex. F. at Ex. 99.01 at 1.  In order to protect its short position, J Capital attacked ACMR's

16  3Q20 results with another "report" on November 17, 2020.  Ex. G.  ACMR's stock had already

17  declined for several days in a row prior to J Capital's November attack.  Ex. B at 3.  That decline

18  continued on November 17, when J Capital released its second "report."  *Id.*  ACMR's stock then

19  rebounded within the next two weeks, climbing back above where it had been prior to J Capital's

20  second attack.  *Id.* at 2-3.

21      J Capital's attacks did not have any lasting impact on ACMR's stock price.  In early January

22  2021, it rose above $100, before peaking at almost $140 in mid-February.  Ex. B at 2.

23      **C.  Plaintiff's Lawsuit Parrots the Short-Seller Attack**

24      On December 21, 2020, Plaintiff filed this lawsuit, based entirely on the accusations made by

25  J Capital in October 2020.  ECF 1.  Plaintiff does not allege that he ever owned any ACMR stock.

26  _____

27  [2] This was not J Capital's first short-seller attack:  It is being sued for defamation in the U.S. District Court for the Eastern District of New York for an earlier attack against a different company.

28  Complaint, *NOVAGOLD Resources Inc. v. J Capital Research USA LLC*, Case No. 1:20-cv-02875-LDH-PK (E.D.N.Y. June 29, 2020), ECF 1.

He only traded in options contracts for ACMR stock.  Plaintiff was making a bet that the price of ACMR's stock would rise over $100 by November 20, 2020, which is when the window to exercise the options would close.  ECF 23-3 at 2.  On November 3, 2020, as the closing of that window neared, Plaintiff ended his speculation in ACMR.  He sold the options contracts, without having purchased or sold any ACMR stock.  *Id.*

Despite having six months during which to flesh out his claims, Plaintiff's Amended Complaint contains no allegations other than those made by J Capital.

## ARGUMENT

Plaintiff fails to state a claim for Section 10(b) of the Exchange Act because he fails to allege (1) a fraudulent state of mind ("scienter"); (2) a material misrepresentation or omission; or (3) loss causation.  *See Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1188 (9th Cir. 2021) (elements of 10(b) claim).  Plaintiff must "satisfy the heightened pleading requirements of both Federal Rule of Civil Procedure 9(b) and the [PSLRA]."  *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 2018 U.S. Dist. LEXIS 149393, at *5 (N.D. Cal. Aug. 31, 2018) (Gilliam, J.).  Plaintiff's allegations fall short of this stringent standard.

## I.    PLAINTIFF FAILS TO ALLEGE SCIENTER

Plaintiff does not allege the required particularized facts giving rise to a "strong inference" that any defendant "acted with an intent to deceive, manipulate, or defraud."  *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).  To satisfy this element, Plaintiff's allegations must be "more than merely plausible or reasonable–[they] must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Tellabs, Inc. v. Makor Issues & Rights*, 551 U.S. 308, 314 (2007).  Despite this "high bar for pleading scienter," *Graves v. AECOM*, 2017 U.S. Dist. LEXIS 222299, at *29 (C.D. Cal. June 19, 2017), the Amended Complaint contains only a *single*, conclusory allegation: that the Individual Defendants must have been aware of purported "true facts" because of their positions at ACMR.  ¶ 147.  This allegation falls short for three reasons.

***Cannot Infer Scienter from Defendants' Job Titles.***  The Ninth Circuit has squarely rejected Plaintiff's only theory of scienter—that Defendants must have been "privy to confidential proprietary

information concerning ACM[R]" because they were Company executives.  ¶ 147.  "Where a complaint relies on allegations that management had an important role in the company but does not contain additional detailed allegations about the defendants' actual exposure to information, it will usually fall short of the PSLRA standard."  *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021) (affirming dismissal where "[t]here [was] thus no factual basis for the allegation that [defendant] acted with knowledge or deliberate recklessness"); *see also In re Oak Tech. Sec. Litig.*, 1997 U.S. Dist. LEXIS 18503, at *30-31 (N.D. Cal. Aug. 1, 1997) (Williams, J.) (dismissing complaint; no scienter based on allegation that "because of [individual defendants'] positions" they "were privy to inside information").  In a similar case, Judge Tigar rejected the plaintiff's attempt to infer scienter from defendants' roles within the company and their access to internal information.  *Curry v. Yelp Inc.*, 2015 U.S. Dist. LEXIS 159001, at *45 (N.D. Cal. Nov. 24, 2015), *aff'd*, 875 F.3d 1219 (9th Cir. 2017).  He held that "corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter."  *Yelp*, 2015 U.S. Dist. LEXIS 159001, at *46.  The same is true here.

***No Factual Support.***  Courts in this district regularly dismiss complaints like Plaintiff's that contain conclusory scienter allegations.  *See, e.g.*, *Rok v. Identiv, Inc.*, 2016 U.S. Dist. LEXIS 105761, at *14 (N.D. Cal. Aug. 10, 2016) (Breyer, J.); *Philco Invs., Ltd. v. Martin*, 2011 U.S. Dist. LEXIS 114314, at *27 (N.D. Cal. Oct. 4, 2011) (Breyer, J.) ("[c]onclusory allegations about a defendant's state of mind, without specific facts, are not enough").  For example, in *Identiv*, Judge Breyer held that a complaint failed to allege scienter because it "merely plead[ed] conclusory assertions" about defendants' state of mind.  2016 U.S. Dist. LEXIS 105761, at *10.  As in *Identiv*, Plaintiff does not provide a single fact to support his boilerplate allegation of scienter.  "In short, there are no allegations regarding what [Defendants] knew at the time any alleged misstatement was made, and no allegations of particularized contemporaneous facts showing that [Defendants] had any information — whether via internal documents, meeting notes, emails, or otherwise — that might cast doubt on any particular statement that [they] allegedly made at that time[.]"  *Jackson v. Fischer*, 2015 U.S. Dist. LEXIS 32128, at *51-52 (N.D. Cal. Mar. 13, 2015) (Hamilton, J.) (dismissing complaint).

***Group Pleading Disallowed.***  The Amended Complaint lumps all Defendants together and tries to assign scienter collectively.  *See* ¶ 147.  Courts in our Circuit hold that such group pleading cannot allege scienter.  *See, e.g.*, *Or. Pub. Emples. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 607 (9th Cir. 2014) ("we require that the Plaintiffs allege scienter with respect to each of the individual defendants"); *In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1154 (C.D. Cal. 2007) ("the group pleading doctrine can no longer be used in pleading cases under the PSLRA").  The Amended Complaint fails to comply with this basic instruction.

Because Plaintiff fails to plead scienter, the Court may end its analysis here.  *See Yelp Inc.*, 875 F.3d at 1222 (affirming dismissal for failure to plead scienter and loss causation; "[w]e need not reach and do not reach Plaintiffs' arguments regarding materiality and falsity"); *Hessefort v. Super Micro Comput., Inc.*, 2020 U.S. Dist. LEXIS 59505, at *32 (N.D. Cal. Mar. 23, 2020) (Tigar, J.) ("Because scienter is a necessary element of a Section 10(b) claim, Plaintiffs have failed to state such a claim and the Court need not reach Defendants' argument regarding whether the statements at issue are actionable"); *Wachovia Equity Sec. Litig. v. Wachovia Corp.*, 753 F. Supp. 2d 326, 367 (S.D.N.Y. 2011) ("Because the issue of scienter proves fatal to Plaintiffs' Section 10(b) claims, the Court need not reach the remaining elements of securities fraud.").

## II.   PLAINTIFF FAILS TO ALLEGE A FALSE OR MISLEADING STATEMENT

An alternative basis for dismissal is that Plaintiff cannot satisfy the PSLRA's "exacting requirements for pleading 'falsity[,]'" which require "specific facts indicating why those statements were false." *Corinthian Colls.*, 540 F.3d at 1070.  Nor does Plaintiff allege that Defendants "affirmatively create[d] an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hospitals Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).  The Amended Complaint challenges statements about ACMR's revenues, profits, and other financials. *E.g.*, ¶¶ 40-42, 44-45, 47, 49, 50, 51.  It fails for two independent reasons: (A) Plaintiff relies entirely on unreliable, self-interested short-seller attacks; and (B) the Amended Complaint contains no factual allegations that ACMR's disclosures were inaccurate.

### A.   Complaint Relies Solely on J Capital's Short-Seller Attacks

The Amended Complaint recites J Capital's two "reports" dated October 8, 2020 and

November 17, 2020 as its sole source of allegations.  ¶¶ 113-24, 135-42.  Courts in this district and elsewhere have repeatedly dismissed securities complaints based on short-seller attacks.  *Mulquin v. Nektar Therapeutics*, 2020 U.S. Dist. LEXIS 244841 (N.D. Cal. Dec. 30, 2020) (Gilliam, J.); *In re Intrexon Corp. Sec. Litig.*, 2017 U.S. Dist. LEXIS 26401 (N.D. Cal. Feb. 24, 2017) (Seeborg, J.); *Bonanno v. Cellular Biomedicine Grp., Inc.*, 2016 U.S. Dist. LEXIS 119194 (N.D. Cal. Sep. 2, 2016) (Orrick, J.).  The courts recognize that short sellers "operate by speculating that the price of a security will decrease[,]" which means "they have an obvious motive to exaggerate the infirmities of the securities in which they speculate."  *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 910 F. Supp. 2d 561, 577 (S.D.N.Y. 2012) (dismissing complaint).  J Capital admitted as much:  "[it] may benefit from short positions . . . and therefore stands to realize significant gains[.]"  Ex. C at 1; Ex. G at 1.

As discussed below, J Capital is a particularly fragile source on which to base a securities-fraud complaint.  Two courts have recently dismissed securities complaints based on J Capital's short-seller attacks.  *See City of Birmingham Ret. & Relief Sys. v. A.O. Smith Corp.*, 468 F. Supp. 3d 1048, 1058 (E.D. Wis. 2020) (dismissing complaint that "relies on JCap's speculation"); *Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 803 (S.D.N.Y. 2020) ("allegations contained in the JCap Report [are] insufficiently particular").[3]  This Court should do the same for three reasons.

***No Independent Investigation.***  Courts regularly dismiss falsity allegations that rely entirely on short-seller reports without any independent investigation.  *See, e.g.*, *Diaz v. N. Dynasty Mins.*, 2018 U.S. Dist. LEXIS 237781, at *17 (C.D. Cal. Apr. 30, 2018) (dismissing complaint; "[t]he basis for each and every allegation of falsity in the FAC is the [short-seller] Report"); *Harris v. AmTrust Fin. Servs.*, 135 F. Supp. 3d 155, 159 (S.D.N.Y. 2015), *aff'd*, 649 Fed. App'x 7 (2d. Cir. 2016) (dismissing complaint "[r]elying almost entirely on a negative report published by a short seller").  Similarly, in *Fanhua*, the court dismissed a complaint that "rel[ied] entirely on the JCap Report's summary" because there was "no indication that plaintiff's counsel here tried to locate or contact a single one of the sources on which they rely[.]"  442 F. Supp. 3d at 804.  The same is true here.

---

[3] Another securities lawsuit based on a J Capital report was recently voluntarily dismissed.  Notice of Voluntary Dismissal, *In re STAAR Co. Sec. Litig.*, Case No. 8:20-cv-01533-JVS-JDE (C.D. Cal. Jan. 15, 2021), ECF 44.

There is "no indication" that Plaintiff did anything more than recycle J Capital's allegations.  *Id.*

      ***No Support for J Capital's Credibility.***  Plaintiff's absolute reliance on J Capital warrants dismissal where, as here, Plaintiff cannot provide the facts necessary to credit J Capital's accusations. For example, in *In re Nektar Therapeutics*, Judge Gilliam held that a short-seller report was "subject to the same standard applied to evaluate facts alleged to have originated with any 'confidential informant' (or other witness)."  2020 U.S. Dist. LEXIS 122715, at \*29 (N.D. Cal. July 13, 2020) (Gilliam, J.) (dismissing complaint).  He found that "[p]laintiffs fail to sufficiently show that the Report supports their allegations of falsity" because of the short seller's "disclosures detailing that it stood to benefit from a poor performance in Nektar's stock price and the lack of any information establishing why [short seller's] opinions on the highly-technical matters at issue here are reliable[.]" *Id.*  Similarly, Plaintiff provides no particularized facts showing that J Capital's opinions are credible, rather than self-motivated.

      The Amended Complaint also fails to provide the Court with the required information about J Capital's supposed "source": an anonymous former employee.  ¶¶ 119-129.  The Ninth Circuit only credits allegations from such confidential witnesses if the complaint "provide[s] an adequate basis for determining that the witnesses in question have personal knowledge of the events they report." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009).  The Court should not credit such allegations because "the confidential sources whose statements comprise the basis of the [short-seller] Report are not described with any identifying information and do not disclose their own sources[.]"  *Dynasty Mins.*, 2018 U.S. Dist. LEXIS 237781, at \*19.  The Amended Complaint does not even claim that the former employee was employed by ACMR *during* the Class Period, so "the anonymous interviewees' statements are, aside from the JCap Report's use of the present tense, entirely unmoored in time."  *Fanhua*, 442 F. Supp. 3d at 803.  Like in *Fanhua*, the Court should dismiss the Amended Complaint because "[P]laintiff's counsel in this case appear to have done nothing whatsoever to confirm the identities or statements of the confidential sources cited in the JCap Report."  *Id.* at 804.

      Plaintiff's failure to provide this information is even more egregious because he misleadingly quotes J Capital's own supposed sources.  ¶ 119.  Although J Capital attributes statements to two

*different* people, a former employee and a third party (Ex. C at 32), Plaintiff *combines* the two statements and attributes *both* to the supposed former employee.  ¶ 119.

>  ***J Capital Disclaimed Its Own Allegations.***  Rather than standing by its accusations against ACMR, J Capital disclaimed them.  J Capital's reports explicitly stated that it "makes no representation, express or implied, as to the *accuracy*, timeliness, or completeness of any such information or with regard to the results to be obtained from its use."  Ex. C at 1; Ex. G. at 1 (emphasis added).  The Ninth Circuit has held that similar language in short-seller reports warrants dismissal.  *See Grigsby v. BofI Holding, Inc.*, 979 F.3d 1198, 1208 (9th Cir. 2020) (affirming in part dismissal where author of short-seller report "ma[de] no representation as to the accuracy or completeness of the information"); *see also Mulquin v. Nektar Therapeutics*, 2020 U.S. Dist. LEXIS 244841, at *43 (N.D. Cal. Dec. 30, 2020) (Gilliam, J.) (dismissing complaint based on short-seller report that "disclaimed any representation, express or implied, as to the accuracy, timeliness, or completeness of any such information").

As this Court has recognized, "unsupported opinion . . . cannot substitute for specific factual allegations."  *Mazzaferro v. Aruba Networks Inc.*, 2015 U.S. Dist. LEXIS 15613, at *7 (N.D. Cal. Feb. 2, 2015) (Chhabria, J.), *aff'd sub nom. Par Inv. Partners, L.P. v. Aruba Networks, Inc.*, 681 F. App'x 618 (9th Cir. 2017).  J Capital itself admitted that the accusations in its reports represented its *opinion*, not actual facts.  *E.g.*, ¶ 120 ("We *think* ACMR management is using five on-paper-only companies to divert money.") (emphasis added); ¶ 120 ("We *think* that extra payment was diverted") (emphasis added); ¶ 117 ("We *think* least $11 mln in warranty and service costs are understated.") (emphasis added); ¶ 117("ACMR *appears* to be strapped for cash") (emphasis added).  Because "[t]he author of the [J Capital reports] discloses that the [reports] represented his or her opinion[,]" they "fail[] to satisfy the PSLRA's requirements."  *Miller v. PCM, Inc.*, 2018 U.S. Dist. LEXIS 148930, at *29 (C.D. Cal. Jan. 3, 2018) (dismissing complaint based on short-seller's opinions).

## B.   No Allegations That ACMR's Disclosures Were Inaccurate

Aside from J Capital's accusations, the Amended Complaint lacks any allegations of falsity. Plaintiff copied and pasted snippets from ACMR's SEC filings, press releases, and earnings calls with random segments bolded and italicized.  After each block of text, Plaintiff then repeats a list of

conclusions without any factual basis.  *E.g.*, ¶¶ 43, 46, 48, 50, 52, 54.  The Ninth Circuit soundly

rejects such "[a] litany of alleged false statements, unaccompanied by the pleading of specific facts

indicating why those statements were false[.]"  *Corinthian Colls.*, 540 F.3d at 1070.  This Court

dismissed a complaint for similar reasons in *Union Asset Mgmt. Holding AG v. SanDisk Corp.*,

finding that it was "little more than a long list of block quotes from statements made by SanDisk

representatives (parts of which have been bolded and italicized for reasons that the complaint does

not really explain)[.]"  2016 U.S. Dist. LEXIS 15090, at \*12-13 (N.D. Cal. Jan. 22, 2016) (Chhabria,

J.).  As in *SanDisk*, Plaintiff's copy and paste job "doesn't meet the demanding pleading standards of

the PSLRA."  *Id.* at \*13.

In addition, as discussed below, ACMR accurately disclosed its (i) revenues and profits; (ii)

profit margins; (iii) equipment payments; and (iv) cash flow.

***Revenues and Profits.***  Plaintiff states—with no support—that ACMR "materially overstated

its revenues and profits" and that its "revenue and profits had been diverted to undisclosed related

parties."  *E.g.*, ¶¶ 43, 48, 50.  This allegation fails.

*First*, the Amended Complaint cannot maintain an accounting claim because it does not even

allege "such basic details as the approximate amount by which revenues and earnings were

overstated" or "the dates of any of the transactions" with supposed undisclosed related parties.  *In re*

*Daou Sys. Inc., Sec. Litig.*, 411 F.3d 1006, 1016 (9th Cir. 2005).  Plaintiff claims that the supposed

revenue and profits overstatements were "material" without providing any facts comparing the

purported overstatements with ACMR's reported revenue and profits.  There is no factual basis for

Plaintiff's assertion that ACMR's revenues or profits were overstated: ACMR has *not* restated its

revenues or profits.  *See Deason v. Super Micro Comput., Inc.*, 2017 U.S. Dist. LEXIS 162978, at \*5

(N.D. Cal. Sep. 29, 2017) (Davila, J.) (dismissing complaint that "d[id] not allege that Super Micro

was required to issue a restatement"); *Turner v. magicJack VocalTec, Ltd.*, 2014 U.S. Dist. LEXIS

13293, at \*25 (S.D.N.Y. Jan. 29, 2014) (dismissing complaint where "there has been no

restatement").

*Second*, the Amended Complaint mistakenly hypothesizes that "ACM's diverted and/or

disappeared revenue was highlighted in the J Capital report demonstrating the gap between the

Company's STAR IPO account and U.S. GAAP account[.]"  ¶ 123.  Plaintiff misrepresents his source

material.  That section of the J Capital report—including the table copied and pasted in the Amended

Complaint—concerns *cash balances*, not *revenue*.  Ex. C at 9.  It is unsurprising that ACMR, the

parent company, would have more cash on its balance sheet than one of its several subsidiaries.  In

addition, Plaintiff fails to "allege at least some facts to support that . . . any variation is not

attributable to variations in reporting rules or accounting standards."  *In re China Valves Tech. Sec.*

*Litig.*, 2012 U.S. Dist. LEXIS 130284, at *19 (S.D.N.Y. Sep. 12, 2012) (dismissing complaint based

on differences between U.S. and Chinese filings; plaintiff did "not allege what accounting standards,

if any, are required for [Chinese] filings, [and] the similarities or differences between those standards

and U.S. GAAP").  As ACMR itself had informed investors, information disclosed by its Chinese

subsidiary would differ "due to the distinct, and potentially inconsistent, accounting standards

applicable to the two companies and disclosure requirements imposed by securities regulatory

authorities."  Ex. H at 6.

   *Finally*, Plaintiff's claim that ACMR's revenues and profits were overstated because it

secretly used third-party sales agents (¶ 120) is at odds with the Company's lengthy disclosures about

agents in its sales process.  Ex. H at Ex. 99.01 at 97, 244 ("The company mainly develops the market

through agents"; "the company signs a product sales agency agreement with the agent, and the agent

is responsible for the marketing of related products in a specific region"; "[t]he company . . . pays the

agent commission according to the type of the products it sells as an agent and the commission rate

agreed in advance").  Plaintiff cannot claim that information was omitted when the Company itself

had already publicly disclosed it.  *See Tadros v. Celladon Corp.*, 738 F. App'x 448, 448 (9th Cir.

2018) (affirming dismissal where allegedly omitted facts had been publicly disclosed); *McGovney v.*

*Aerohive Networks, Inc.*, 367 F. Supp. 3d 1038, 1056 (N.D. Cal. 2019) (Koh, J.) (dismissing

complaint; "Aerohive discloses exactly what Plaintiffs claim Aerohive omitted").

   **Profit Margins.**  Plaintiff's theory that "the Company inflated its gross profit margin by

burying production costs in the R&D budget" (*e.g.*, ¶¶ 48, 50, 52) fares no better.  Plaintiff cannot

claim that that information was omitted because ACMR repeatedly disclosed its R&D costs.  Ex. I at

5; Ex. J at 5.  He just recycles J Capital's *opinion* that if R&D costs "were added to COGS [Cost of

1    Goods Sold] for Q3 2020, *as we believe they should be*, gross margin would drop by 20 points." ¶

2    142 (emphasis added).  Plaintiff does not provide facts showing that any production costs—much less

3    what amounts—were misclassified as R&D.  The Court should not credit his baseless supposition.

4    *See AmTrust Fin. Servs.*, 135 F. Supp. 3d at 171 (dismissing complaint that "fail[ed] to include factual

5    support for its *ipse dixit* that loss and loss adjustment expenses were misclassified") (emphasis in

6    original).

7        ***Equipment Payments.***  Plaintiff is wrong that Defendants failed to disclose that "12.5% of

8    equipment delivered since 2009 and 45% of total inventory has not been paid for."  *E.g.*, ¶¶ 48, 50,

9    52.  ACMR publicly disclosed this very information.  *See* Ex. J at 26 (ACMR has delivered "more

10   than 120 single-wafer wet cleaning and other front-end processing tools, more than 105 of which

11   have been accepted by customers"); Ex. H at Ex. 99.01at 260 (as of December 31, 2019, 44.79% of

12   products "have been produced and delivered but not yet accepted").  Despite the fact that J Capital

13   cited ACMR's 3Q20 10-Q for this information (Ex. G at 8), Plaintiff misleadingly omitted the

14   citation when he copied and pasted the text into the Amended Complaint.  ¶ 142.  Plaintiff cannot

15   allege this information was omitted when it had been publicly disclosed.  *See Celladon*, 738 F. App'x

16   at 448; *Aerohive*, 367 F. Supp. 3d at 1056.

17        In addition, none of the challenged statements has anything to do with equipment deliveries or

18   the amount of inventory that was paid for.  *See Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 808

19   (N.D. Cal. 2019) (Freeman, J.) (no falsity for challenged statements "entirely unrelated to the loan

20   practices Plaintiffs complain of"); *Jui-Yang Hong v. Extreme Networks, Inc.*, 2017 U.S. Dist. LEXIS

21   64297, at *48 (N.D. Cal. Apr. 27, 2017) (Freeman, J.) (dismissing complaint; "the reasons Plaintiffs

22   offer as to why the statements are false or misleading bear no connection to the substance of the

23   statements themselves").  Unpaid equipment deliveries did not impact ACMR's revenues because the

24   Company only recognized revenue on equipment *after* customers accepted it.  *See* Ex. J at 26 (only

25   deliveries "accepted by customers . . . generated revenue to us").

26        ***Cash Flow***.  Plaintiff challenges various statements about ACMR's cash flow because it was

27   supposedly "cash-strapped, as evidenced by its reliance on multiple credit lines[.]"  ¶ 64; *see also* ¶

28   75.  But Plaintiff does not allege that the amounts of cash ACMR disclosed were incorrect, and the

existence of lines of credit does not somehow make cash balances false.  *See LendingClub*, 423 F. Supp. 3d at 808; *Extreme Networks*, 2017 U.S. Dist. LEXIS 64297, at *48.  In addition, the "15 different lines of credit" that Plaintiff claims were first disclosed by J Capital in November 2020 (¶ 137) had already been disclosed by ACMR.  *See* Ex. J at 14; *see also Celladon*, 738 F. App'x at 448-49; *Aerohive*, 367 F. Supp. 3d at 1056.[4]

## III.   PLAINTIFF FAILS TO ALLEGE LOSS CAUSATION

Yet an additional alternative basis for dismissal is that the Amended Complaint fails to allege loss causation with the requisite particularity.  *See Uber*, 2021 U.S. App. LEXIS 14892, at *11 ("Rule 9(b) applies to all elements of a securities fraud action, including loss causation.").  In *Uber*, the Ninth Circuit affirmed dismissal of a securities class action that alleged a general drop following a number of purported misstatements because the complaint "did not adequately and with particularity allege that these revelations *caused* the resulting drop."  *Id.* at *19 (emphasis in original).  Similarly, the Amended Complaint "lack[s] specific facts indicating that the decline in the defendant's stock price was proximately caused by a revelation of fraudulent activity rather than by changing market conditions, changing investor expectations, or other unrelated factors."  *Cunningham v. Identiv, Inc.*, 716 F. App'x 663, 664 (9th Cir. 2018) (affirming dismissal).

Plaintiff tries to plead loss causation simply by pointing to two small stock drops: 1.52% on October 8, 2020, and 4.93% on November 17, 2020.  *See* ¶¶ 126, 143.  To show that the stock drops were due to something other than market fluctuations, a plaintiff cannot "simply allege a defendant's stock price declined; the decline in stock price must be 'statistically significant.'"  *Eng v. Edison Int'l*, 2018 U.S. Dist. LEXIS 43629, at *6-7 (S.D. Cal. Mar. 16, 2018) (dismissing complaint).  In *Edison*, Judge Benitez explained that "to plausibly allege loss causation, Plaintiff must allege facts from

---

[4] Plaintiff's other theories are similarly flawed.  Although he claims that Defendants failed to disclose that ACMR's "internal controls and procedures were not effective" (*e.g.*, ¶¶ 52, 62, 73), he does not plead any facts questioning the effectiveness of ACMR's internal controls.  *See Rok v. Identiv, Inc.*, 2017 U.S. Dist. LEXIS 1019, at *18 (N.D. Cal. Jan. 4, 2017) (Breyer, J.) (no liability for statements about internal controls where complaint made unfounded "assumption" that weaknesses existed).  Plaintiff's claim that Defendants omitted that ACMR would have limited access to its Chinese subsidiary's funds (¶ 112) conveniently ignores ACMR's earlier disclosure that "[u]nder existing [Chinese] laws and regulations, it may be difficult, if not impossible, for [ACMR] to be able to receive dividends comprised of funds generated by ACM Shanghai[.]"  Ex. K at 16.

which the Court may draw an inference that Defendants' allegedly fraudulent conduct was a *substantial* cause of his loss[.]" *Id.* at *8 (emphasis in original).  He dismissed a complaint that alleged four stock drops of collectively 6.9% for failure to plead loss causation because the "stock price drops were well within [the company's] average trading range." *Id.* at *9-10; *accord Camp v. Qualcomm Inc.*, 2020 U.S. Dist. LEXIS 42079, at *19 (S.D. Cal. Mar. 10, 2020) (dismissing complaint for failure to plead loss causation because 4.02% drop was "minimal," whereas "securities complaints tend to be predicated on double digit declines").

Plaintiff does not claim that either stock dip was statistically significant.  On the contrary, like the stock drops in *Edison*, the two declines alleged in the Amended Complaint were well within ACMR's regular trading range.  ACMR's 1.52% drop on October 8, 2020 was flanked by much greater fluctuations: a 7.51% decline on October 6 and a 6.58% increase on October 9.  Ex. B at 3.  The 1.52% drop was actually the *smallest* fluctuation in ACMR's stock that week.  *Id.*  The same is true of the second stock drop.  On November 17, 2020, ACMR was in the fourth day of a five-day slide (*id.*), prior to any purported revelation of fraud.  ACMR's stock had been highly volatile in November: the week before November 17, it dropped and then rose by over 8% on consecutive days, and in the week after November 17, it rose again by over 8% in a single day.  *Id.*[5]

The Court should follow the Ninth Circuit in rejecting Plaintiff's unsupported loss causation theory.  *See Corinthian Colls.*, 540 F.3d at 1064-65 (rejecting unsupported loss causation theory in favor of "more plausible" explanation).

---

[5] Plaintiff also cannot establish loss causation for the November 17, 2020 stock drop because he sold his options contracts for ACMR stock two weeks earlier.  ECF 23-3 at 2; *see also Dean v. China Agritech, Inc.*, 2011 U.S. Dist. LEXIS 124264, at *15 (C.D. Cal. Oct. 27, 2011) (no loss causation where "[c]ertification clearly shows that Yong sold his stock prior to the release of the LM Report").  Plaintiff's original complaint only alleged a stock drop in October 2020 (ECF 1), and he added the November 2020 stock drop in the Amended Complaint.  This Court previously admonished the other prospective lead plaintiff candidate for attempting to claim a loss on a sale before the stock drop.  ECF 43 at 4-6.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be granted.[6]  Plaintiff has already used up his amendment as of right under Rule 15.  He asked for, and received, additional time in which to develop the amended complaint.  The case has already been pending over 6 months—ample time in which to draft a complaint that does more than quote short-seller reports. This may be the rare case in which dismissal should be with prejudice.

Dated: May 27, 2021                    Respectfully submitted,

FRESHFIELDS BRUCKHAUS DERINGER US LLP

By:  /s/ *Boris Feldman*
          Boris Feldman

*Attorneys for Defendants*

---

[6] Because Plaintiff's 10(b) claim fails, so does his 20(a) claim.  *See, e.g.*, *In re Align Tech., Inc. Sec. Litig.*, 2021 U.S. Dist. LEXIS 59783, at *24 (N.D. Cal. Mar. 29, 2021) (Chesney, J.) ("plaintiff has failed to state a claim under § 10(b) or Rule 10b-5, and, consequently, such failure precludes plaintiff from stating a claim under § 20(a)").