BORIS FELDMAN, State Bar No. 128838
boris.feldman@freshfields.com
DORU GAVRIL, State Bar No. 282309
doru.gavril@freshfields.com
DREW LIMING, State Bar No. 305156
drew.liming@freshfields.com
M. ABIGAIL WEST, State Bar No. 324456
abigail.west@freshfields.com
FRESHFIELDS BRUCKHAUS DERINGER US LLP
2710 Sand Hill Road
Menlo Park, CA 94025
Telephone: (650) 618-9250

*Attorneys for Defendants ACM Research, Inc.,*
*David Hui Wang, Lisa Feng, and Mark A. McKechnie*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JEFFREY KAIN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ACM RESEARCH, INC., DAVID HUI WANG, LISA FENG, and MARK A. MCKECHNIE,<br><br>Defendants. | Case No.: 3:20-CV-09241-VC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date:    December 2, 2021<br>Time:    10:00 a.m.<br>Location: Courtroom 4 - 17th Floor<br>Judge:   Hon. Vince Chhabria |

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION……………………………………………………….... 1

STATEMENT OF ISSUES…………………………………………………………………... 1

INTRODUCTION…………………………………………………………………………... 1

BACKGROUND………………………………………………………....………………..... 2

    A. ACMR's High-Tech Business Supports the Chip Manufacturing Industry………….. 2

    B. ACMR Is Attacked Twice by a Speculative Short Seller………………………….... 2

    C. The Court Dismissed Plaintiff's Previous Attempt………………………………..... 3

ARGUMENT………………………………………………………………………………… 4

  I.    PLAINTIFF (STILL) FAILS TO ALLEGE SCIENTER………………………………... 4

  II.    PLAINTIFF AGAIN FAILS TO ALLEGE A FALSE OR MISLEADING STATEMENT ….. 5

    A. Plaintiff Again Relies Exclusively on J Capital's Deficient Short-Seller Attacks……. 5

    B. No New Allegations that ACMR's Disclosures Were Inaccurate……………………. 7

  III.    PLAINTIFF AGAIN FAILS TO ALLEGE LOSS CAUSATION…………………………... 14

CONCLUSION………………………………………………………………………….... 15

# TABLE OF AUTHORITIES

## CASES

*In re Align Tech., Inc. Sec. Litig.*,
2021 U.S. LEXIS 59783 (N.D. Cal. Mar. 29, 2021)....................................................15

*Bonanno v. Cellular Biomedicine Grp., Inc.*,
2016 U.S. Dist. LEXIS 119194 (N.D. Cal. Sep. 2, 2016)..............................................6

*In re China Mobile Games & Entm't Grp., LTD Sec. Litig.*,
2016 U.S. Dist. LEXIS 29258 (S.D.N.Y. Mar. 7, 2016)...............................................12

*In re China Valves Tech. Sec. Litig.*,
2012 U.S. Dist. LEXIS 130284 (S.D.N.Y. Sep. 12, 2012).........................................8, 9

*In re China XD Plastics Co. Ltd. Sec. Litig.*,
2016 U.S. Dist. LEXIS 37951 (S.D.N.Y. Mar. 23, 2016)..............................................8

*City of Birmingham Ret. & Relief Sys. v. A.O. Smith Corp.*,
468 F. Supp. 3d 1048 (E.D. Wis. 2020).......................................................................6

*Cunningham v. Identiv, Inc.*,
716 F. App'x 663 (9th Cir. 2018)................................................................................14

*In re Daou Sys. Inc., Sec. Litig.*,
411 F.3d 1006 (9th Cir. 2005)................................................................................9, 13

*Deason v. Super Micro Comput., Inc.*,
2017 U.S. Dist. LEXIS 162978 (N.D. Cal. Sep. 29, 2017)............................................9

*Eng v. Edison Int'l.*,
2018 U.S. Dist. LEXIS 43629 (S.D. Cal. Mar. 16, 2018)............................................15

*Harris v. AmTrust Fin. Servs.*,
135 F. Supp. 3d 155 (S.D.N.Y. 2015).........................................................................10

*Harris v. AmTrust Fin. Servs.*,
649 Fed. App'x 7 (2d. Cir. 2016).................................................................................10

*In re Hebron Technology Co., Ltd.*,
2021 U.S. Dist. LEXIS 181162 (S.D.N.Y. Sep. 22, 2021)...........................................12

*Hessefort v. Super Micro Comput., Inc.*,
2020 U.S. Dist. LEXIS 59505 (N.D. Cal. Mar. 23, 2020)..............................................5

*Hessong v. Pinterest, Inc.*,
2021 U.S. Dist. LEXIS 182426 (N.D. Cal. Sep. 23, 2021)............................................7

*Hong v. Extreme Networks, Inc.*,
  2017 U.S. Dist. LEXIS 64297 (N.D. Cal. Apr. 27, 2017)...................................................... 10

*Hurst v. Enphase Energy, Inc.*,
  2021 U.S. Dist. LEXIS 155188 (N.D. Cal. Aug. 17, 2021)....................................... 7, 9, 10, 12

*In re Intrexon Corp. Secs. Litig.*,
  2017 U.S. Dist. LEXIS 26401 (N.D. Cal. Feb. 24, 2017)............................................................ 6

*Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*,
  2018 U.S. Dist. LEXIS 149393 (N.D. Cal. Aug. 31, 2018)........................................................ 4

*In re L&L Energy Sec. Litig.*,
  908 F. Supp. 2d 1147 (W.D. Wash. 2012)................................................................................ 8

*Lopes v. Fitbit, Inc.*,
  2020 U.S. Dist. LEXIS 52187 (N.D. Cal. Mar. 23, 2020)....................................................... 15

*Lopes v. Fitbit, Inc.*,
  848 Fed. App'x 278 (9th Cir. 2021)........................................................................................ 15

*Lu v. Align Tech., Inc.*,
  417 F. Supp. 3d 1266 (N.D. Cal. 2019)................................................................................... 10

*McGovney v. Aerohive Networks, Inc.*,
  367 F. Supp. 3d 1038 (N.D. Cal. 2019)............................................................................. 12, 13

*McGovney v. Aerohive Networks, Inc.*,
  2019 U.S. Dist. LEXIS 228702 (N.D. Cal. Aug. 7, 2019)....................................................... 10

*Mendoza v. HF Foods Grp., Inc.*,
  2021 U.S. Dist. LEXIS 160982 (C.D. Cal. Aug. 25, 2021)...................................................... 13

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008)....................................................................................... 5, 7, 10

*Miao v. Fanhua, Inc.*,
  442 F. Supp. 3d 774, 804 (S.D.N.Y. 2020)............................................................................... 6

*Mulquin v. Nektar Therapeutics*,
  510 F. Supp. 3d 854 (N.D. Cal. 2020)..................................................................................... 15

*In re Nektar Therapeutics*,
  2020 U.S. Dist. LEXIS 122715 (N.D. Cal. July 13, 2020).................................................. 6, 15

*NOVAGOLD Resources Inc. v. J Capital Research USA LLC*,
  Case No. 1:20-cv-02875-LDH-PK (E.D.N.Y. June 29, 2020)................................................... 3

*Philco Invs., Ltd. v. Martin*,
    2011 U.S. Dist. LEXIS 114314 (N.D. Cal. Oct. 4, 2011)........................................................5

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014)................................................................................................9

*Tadros v. Celladon Corp.*,
    738 F. App'x 448 (9th Cir. 2018)....................................................................................12, 13

*Union Asset Mgmt. Holding AG v. SanDisk Corp.*,
    2016 U.S. Dist. LEXIS 15090 (N.D. Cal. Jan. 22, 2016)......................................................7

*Wachovia Equity Sec. Litig. v. Wachovia Corp.*,
    753 F. Supp. 2d 326 (S.D.N.Y. 2011).....................................................................................5

*Weller v. Scout Analytics, Inc.*,
    230 F. Supp. 3d 1085 (N.D. Cal. 2017)................................................................................11

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021)................................................................................................4

## RULES

17 C.F.R. § 229.404................................................................................................................12

## OTHER AUTHORITIES

Don Clark, *'It's a Roller-Coaster Ride': Global Chip Shortage Is Making Industries Sweat*,
New York Times (Apr. 15, 2021), https://www.nytimes.com/2021/04/15/
technology/computer-chip-semiconductor-shortage.html.......................................................11

Mike Colias, *Car Companies Buckle Up For Extended Chip Shortage*, The Wall Street Journal
(Sep. 30, 2021), https://www.wsj.com/articles/car-companies-buckle-up-for-extended-
Chip-shortage-11633005657..................................................................................................11

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that at the time and place noted above, Defendants will and hereby do move to dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6), 8(a) and 9(b).

**STATEMENT OF ISSUES**

Does Plaintiff state a claim under §§ 10(b) or 20(a) of the Securities Exchange Act of 1934?

**INTRODUCTION**

This is Plaintiff's third complaint. Little has changed: like his previous two attempts, which simply copied the allegations of a short-seller report, Plaintiff's third take is a miss on each of the elements required to plead securities fraud. His allegations regarding scienter are *identical*, word-for-word, to those in his deficient second complaint, which the Court dismissed. This, by itself, requires dismissal: one cannot plead fraud without alleging the requisite state of mind. The same is true of the loss causation element, which Plaintiff's latest complaint also fails to augment. Nor could he, if he tried: the market greeted the short-seller report attacking ACMR with a yawn. With no statistically significant stock movement, Plaintiff probably recognized that there simply is not much he can say on loss causation, since he cannot allege any damages.

Finally, Plaintiff is still unable to identify—much less plead with the statutorily required particularized facts—a single false statement. When dismissing his second complaint, the Court noted that Plaintiff had taken a "pot of spaghetti" approach to alleging falsity and simply "parrot[ed] the allegations" made by the short seller. ECF 62 at 2:15-20, 15:12-17. At the hearing, Plaintiff's counsel requested leave to amend on the basis of two allegations he deemed central to the lawsuit: 1) that Defendants purportedly misrepresented the availability of dividends from the IPO of the Company's Chinese subsidiary; and 2) purported undisclosed related party transactions. *Id.* at 3:8-12, 4:11-13. The Court granted Plaintiff leave to amend, but warned that it was "rather skeptical" that "a claim for securities fraud can be stated." *Id.* at 27:25-28:2.

Plaintiff has squandered this additional opportunity to amend. Plaintiff's third complaint does not enhance the two purportedly "key" allegations his counsel identified at the hearing. Instead, as

DEFS' MOTION TO DISMISS SAC                    1
CASE NO. 3:20-CV-09241-VC

discussed below, Plaintiff simply added a few more block quotes from the short-seller report, again unsupported by any particularized facts.  These too fail to plead any false statement.

This has been the story of Plaintiff's lawsuit since its inception a year ago.  Plaintiff rushed to file an unsupported initial complaint that simply block-quoted a short-seller report that was innuendo-rich and data-poor.  During the lead plaintiff contest, Plaintiff was content to abandon his claim in the hands of another plaintiff that did not even have standing.  Reluctantly becoming lead plaintiff when the other candidate was disqualified, Plaintiff simply filed an amended complaint that largely copied and pasted the speculative J Capital short-seller report.

The Court previously asked Plaintiff whether he had done his "best by parroting [J Capital's] report and putting it in a complaint."  ECF 62 at 27:8-9.  Plaintiff's latest complaint reveals his answer is "yes."  This time, the Court should dismiss the claims with prejudice.

<strong>BACKGROUND</strong>

**A.   ACMR's High-Tech Business Supports the Chip Manufacturing Industry**

ACMR was founded in 1998 in Silicon Valley and supplies advanced technologies for the semiconductor industry.  Ex. A at 4, 76.  ACMR has been granted more than 350 patents in the United States, China, Japan, Singapore, South Korea, and Taiwan.  *Id.* at 5.  Currently, the Company's largest source of revenue is its single-wafer wet cleaning equipment, which chip manufacturers use to improve their processes and product yields.  *Id.*

Beginning in 2006, ACMR formed subsidiaries in China and South Korea to manage its growing overseas operations.  Ex. A at 76-77.  ACMR went public in the United States on November 3, 2017.  *Id.* at 77.  Since the IPO, ACMR's business has grown from $74.6 million in 2018 to $107.5 million in 2019 to $156.6 million in 2020.  *Id.* at 73.

**B.   ACMR Is Attacked Twice by a Speculative Short Seller**

Throughout 2020, ACMR was the target of increasing short-seller interest, introducing volatility into its stock price that was due to speculative positions rather than underlying business performance.  ¶ 166.[1]  On October 8, 2020, one such short seller, J Capital, posted online a so-called

---

[1] All references to "¶_" are to the Second Amended Complaint for Violations of the Federal Securities Laws (ECF 63), filed on October 7, 2021.

"report" criticizing ACMR's business. Ex. B. Like most short sellers, J Capital admitted that it may profit if it managed to drive down ACMR's stock price, noting that it "may benefit from short positions . . . and therefore stands to realize significant gains[.]" *Id.* at 1.[2]

J Capital's report simultaneously disclaimed any responsibility for the accuracy of its accusations, while at the same time mischaracterizing information from ACMR's *own public filings*. Ex. B at 1 ("J Capital Research USA LLC makes no representation, express or implied, as to the accuracy, timeliness, or completeness of any such information"). Its report was amply sprinkled with caveats to mask rank speculation and conjecture: "we believe," "we estimate," and "we think." *Id.* at 1, 3-4, 10, 12-13, 15-16, 21-24, 29-30, 33, 38, 41-42.

Once the report was published, mainstream market analysts strongly disagreed with J Capital's opinion of ACMR. *E.g.*, Exs. C & D. For example, one analyst concluded that "JCAP's report could potentially mislead investors." Ex. C at 1. Another warned that "much of [J Capital's] report was misleading, propaganda-driven, and in some cases, erroneous." Ex. D at 1. Given J Capital's credibility deficit, its October 8 "report" was greeted with a yawn: ACMR's stock price declined only 1.52% to $70.79. Ex. E at 5. The following day, it rose 6.58%. *Id.*

On November 4, 2020, ACMR disclosed its 3Q20 financials, with revenue increasing 43% year over year. Ex. F. at Ex. 99.01 at 1. The positive results threatened J Capital's short position, so it attacked ACMR again with another "report" on November 17, 2020. Ex. G. J Capital's attacks did not have any lasting impact on ACMR's stock price. In early January 2021, it rose above $100, before peaking at almost $140 in mid-February. Ex. E at 7.

**C.  The Court Dismissed Plaintiff's Previous Attempt**

On December 21, 2020, Plaintiff filed this lawsuit, based entirely on the accusations made by J Capital. ECF 1. Plaintiff had never owned ACMR stock, speculating entirely on options. ECF 23-3 at 2. After the lead plaintiff contest discussed above, and Plaintiff's filing of an amended complaint, this Court dismissed Plaintiff's amended claims on September 9, 2021. ECF 62 at

---

[2] This was not J Capital's first short-seller attack: It is being sued for defamation in the U.S. District Court for the Eastern District of New York for an earlier attack against a different company. Complaint, *NOVAGOLD Resources Inc. v. J Capital Research USA LLC*, Case No. 1:20-cv-02875-LDH-PK (E.D.N.Y. June 29, 2020), ECF 1.

DEFS' MOTION TO DISMISS SAC                    3
CASE NO. 3:20-CV-09241-VC

27:23-25. At the hearing, the Court explained that Plaintiff had erred by taking "the spaghetti approach" of block quoting Defendants' public statements and copying and pasting a generic list of supposed reasons why they were false. *Id.* at 2:15-25. The Court also found that Plaintiff had failed to allege particularized facts because he "simply incorporat[ed] the [J Capital] report and cut[] and past[ed] portions" of it into the complaint. *Id.* at 15:12-17. The Court noted that Plaintiff's complaint was "drafted so badly" that it was difficult to evaluate, and asked his counsel to focus its pleadings in any amended complaint. *Id.* at 25:4-9. Plaintiff's third iteration of his complaint does nothing to improve his allegations, as discussed below.

## ARGUMENT

Plaintiff's latest complaint fails to state a claim for securities fraud under Section 10(b) of the Exchange Act. Plaintiff must "satisfy the heightened pleading requirements of both Federal Rule of Civil Procedure 9(b) and the [PSLRA]," which require him to plead particularized facts as to each of the elements of a Section 10(b) claim. *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 2018 U.S. Dist. LEXIS 149393, at *5 (N.D. Cal. Aug. 31, 2018) (Gilliam, J.). The complaint fails to plead any of the elements of Plaintiff's claim, much less all three as he is required: (1) intent to defraud ("scienter"); (2) a material misrepresentation or omission; and (3) loss causation. *See Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1188 (9th Cir. 2021) (elements of a Section 10(b) claim).

## I.    PLAINTIFF (STILL) FAILS TO ALLEGE SCIENTER

Here is a redline of Plaintiff's latest scienter allegation against his previous allegation:

> As alleged herein, ACM and the Individual Defendants acted with scienter in that: (i) they knew or recklessly disregarded that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; (ii) they knew or recklessly disregarded that such statements or documents would be issued or disseminated to the investing public; and (iii) they participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. The Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding ACM, their control over and/or receipt and/or modification of ACM's allegedly materially misleading statements, and/or their associations with the Company that made them privy to confidential proprietary information concerning ACM, participated in the fraudulent scheme alleged herein.

¶ 168.

Unable to see any changes? That is because Plaintiff simply copied his prior one-paragraph

allegation word-for-word. To save the Court's time, Defendants will simply incorporate their previous arguments. *See* ECF 50 at 4-6 (no scienter based on inference from job titles, lack of particularized facts, and improper reliance on group pleading).

Plaintiff's boilerplate paragraph still does not allege the required particularized facts giving rise to a "strong inference" that *any* defendant "acted with an intent to deceive, manipulate, or defraud." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008). Bare contentions about a defendant's state of mind, "without specific facts, are not enough." *Philco Invs., Ltd. v. Martin*, 2011 U.S. Dist. LEXIS 114314, at *27 (N.D. Cal. Oct. 4, 2011) (Breyer, J.).

The Court should dismiss Plaintiff's complaint for this reason alone. *See Hessefort v. Super Micro Comput., Inc.*, 2020 U.S. Dist. LEXIS 59505, at *32 (N.D. Cal. Mar. 23, 2020) (Tigar, J.) ("Because scienter is a necessary element of a Section 10(b) claim, Plaintiffs have failed to state such a claim and the Court need not reach Defendants' argument regarding whether the statements at issue are actionable."); *Wachovia Equity Sec. Litig. v. Wachovia Corp.*, 753 F. Supp. 2d 326, 367 (S.D.N.Y. 2011) ("Because the issue of scienter proves fatal to Plaintiffs' Section 10(b) claims, the Court need not reach the remaining elements of securities fraud.").

## II.   PLAINTIFF AGAIN FAILS TO ALLEGE A FALSE OR MISLEADING STATEMENT

Plaintiff again fails to satisfy the PSLRA's "exacting requirements for pleading 'falsity[,]'" which require "specific facts indicating why th[e] [challenged] statements were false." *Corinthian Colls.*, 540 F.3d at 1070. Plaintiff's latest complaint fails for two reasons: (A) Plaintiff failed to heed the Court's advice that he find a basis for his complaint outside of J Capital's reports; and (B) the complaint contains no factual allegations that ACMR's disclosures were inaccurate.

### A.   Plaintiff Again Relies Exclusively on J Capital's Deficient Short-Seller Attacks

The Court previously expressed skepticism that J Capital's self-serving short-seller attacks alone could serve as the basis for Plaintiff's attempt to plead securities fraud. *See* ECF 62 at 24:22-25; *see also id.* at 15:12-17 (noting that Plaintiff was "really doing [him]self a disservice by simply relying on the report, by simply incorporating the report and cutting and pasting portions of the report"). The Court highlighted a number of deficiencies with J Capital's report. The Court noted that the "concerns" raised in the report were largely based on information that was already publicly

disclosed to investors. *Id.* at 14:16-20, 15:7-12. The Court also emphasized that neither the report nor Plaintiff's interpretation of it explained how Defendants allegedly misled the investing public. *Id.* at 4:25-5:15, 15:17-20. Plaintiff's latest complaint again relies entirely on the deficient J Capital report, without addressing any of these concerns.

Courts routinely dismiss complaints based on short-seller reports when those reports fail to provide the particularized facts necessary to plead falsity in a securities class action. For example, in *Miao v. Fanhua, Inc.*, the court dismissed a complaint that "relie[d] exclusively on general statements credited to anonymous interviewees in a secondhand short-seller report which contain[ed] demonstrable errors and [wa]s uncorroborated by an independent investigation by counsel." 442 F. Supp. 3d 774, 804 (S.D.N.Y. 2020); *see also In re Nektar Therapeutics*, 2020 U.S. Dist. LEXIS 122715, at *28 (N.D. Cal. July 13, 2020) (Gilliam, J.) (dismissing complaint; "nothing in the [complaint] details why [short seller's] assertions support a plausible inference of falsity"); *In re Intrexon Corp. Secs. Litig.*, 2017 U.S. Dist. LEXIS 26401, at *16-17 (N.D. Cal. Feb. 24, 2017) (Seeborg, J.) (no falsity for allegations that "relie[d] on [short seller's] attack"). This is not surprising. Courts recognize that short-seller reports, apart from being inherently biased, also frequently rely on conjecture and supposition based on the target's own public disclosures, adding nothing new to the mix of information. *See, e.g.*, *Fanhua*, 442 F. Supp. 3d at 796 (short sellers "have an obvious motive to exaggerate the infirmities of the securities in which they speculate"); *Bonanno v. Cellular Biomedicine Grp., Inc.*, 2016 U.S. Dist. LEXIS 119194, at *5 (N.D. Cal. Sep. 2, 2016) (Orrick, J.) (short-seller report simply "opined" on publicly available information).

J Capital's reports, in particular, have been rejected by other courts as too speculative to even begin to form the basis for a securities lawsuit. *See City of Birmingham Ret. & Relief Sys. v. A.O. Smith Corp.*, 468 F. Supp. 3d 1048, 1058 (E.D. Wis. 2020) (dismissing complaint that "relie[d] on JCap's speculation" and noting that the J Capital report failed to show falsity); *Fanhua*, 442 F. Supp. 3d at 774, 796, 803 (dismissing complaint that "rel[ied] entirely on the JCap Report's summary").

While it may be that a hypothetical short-seller report includes enough supporting facts to provide a basis for a securities fraud complaint, that is not the case here. As Judge Freeman recently held, "allegations—derived directly from a report from a short seller—[that] do little more than

cherry pick financial data" fail to plead securities fraud. *Hurst v. Enphase Energy, Inc.*, 2021 U.S. Dist. LEXIS 155188, at \*13 (N.D. Cal. Aug. 17, 2021) (Freeman, J.). She dismissed a complaint that copied a short seller's accusation that Enphase's financial reporting "d[id] not add up." *Id.* at \*12-13 ("the fact that Plaintiff (and [short seller]) cannot reconcile the financials . . . does not plausibly allege a misstatement"). The same is true here, because J Capital (and Plaintiff's) "flimsy factual allegations . . . fail to shoulder the heavy weight" of their theories. *Id.* at \*12.

### B. No New Allegations that ACMR's Disclosures Were Inaccurate

When it dismissed his prior complaint, the Court advised Plaintiff that "one of the many problems with [his action] is that it takes the spaghetti approach" of throwing allegations "at the wall and hoping something sticks." ECF 62 at 2:15-20. The Court's directives were consistent with those of the Ninth Circuit, which rejects such attempts to plead securities fraud through "[a] litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false[.]" *Corinthian Colls.*, 540 F.3d at 1070.

Despite the Court's instruction, Plaintiff simply copies and pastes snippets from ACMR's SEC filings, press releases, and earnings calls with random segments bolded and italicized. After each block quote, Plaintiff repeats a refrain of conclusory allegations. *E.g.*, ¶¶ 43, 45, 47, 49. Plaintiff's copying and pasting "doesn't meet the demanding pleading standards of the PSLRA." *Union Asset Mgmt. Holding AG v. SanDisk Corp.*, 2016 U.S. Dist. LEXIS 15090, at \*12-13 (N.D. Cal. Jan. 22, 2016) (Chhabria, J.) (dismissing complaint that was "little more than a long list of block quotes from statements made by SanDisk representatives"); *see also Hessong v. Pinterest, Inc.*, 2021 U.S. Dist. LEXIS 182426, at \*15 (N.D. Cal. Sep. 23, 2021) (Orrick, J.) (dismissing complaint; "[l]isting statements and failing to connect those statements to specific falsities or explanations why the statements are misleading is insufficient").

Far from refining his allegations to the two theories his counsel identified at the motion to dismiss hearing, *see* ECF 62 at 3:8-12, 4:11-13, Plaintiff proposes *five different* theories of falsity concerning ACMR's (i) cash balances; (ii) revenues and profits; (iii) customer advances; (iv) use of sales agents; or (v) ability to access funds from its subsidiary's IPO in China. None states a claim.[3]

---

[3] Perhaps as an artifact of editing, Plaintiff's Second Amended Complaint contains partially-deleted

***Cash Balances.***  Plaintiff erroneously accuses ACMR of misrepresenting its cash balances based on purported differences in its "disclosures to U.S. investors and Chinese regulators."  ¶¶ 139-41.  Plaintiff's accusation has a simple explanation, as Defendants noted before:  Plaintiff is comparing two entirely distinct corporate entities.  ECF 50 at 10-11.  Plaintiff copies and pastes a table from J Capital, which contrasts ACMR's cash balances with those of its Chinese subsidiary.  *See* Ex. B at 9 (comparing cash of the U.S. company and the Chinese subsidiary).  As ACMR publicly disclosed in its SEC filings, the cash reported in its financial statements "include[s] the accounts of the Company *and its subsidiaries*."  Ex. H at 75 (emphasis added).  ACMR, as the parent company, reports the cash of the Chinese subsidiary *plus* the cash of its other subsidiaries and in its own accounts.  It is common sense that ACMR would report more cash than its Chinese subsidiary.[4]

Courts regularly reject attempts like Plaintiff's to manufacture a false statement through an apples-to-oranges comparison.  For example, in *In re China XD Plastics Co. Ltd. Sec. Litig.*, the court dismissed a complaint that sought to allege falsity by contrasting a parent company's consolidated U.S. financials with the Chinese financials of some of its subsidiaries.  2016 U.S. Dist. LEXIS 37951, at *15-21 (S.D.N.Y. Mar. 23, 2016).  As in *China XD Plastics*, "[i]t is not reasonable to infer that [the parent's] SEC filings must be false based upon a comparison to less than a complete set of its subsidiaries' [Chinese] filings."  *Id.* at *19; *see also In re L&L Energy Sec. Litig.*, 908 F. Supp. 2d 1147, 1153 (W.D. Wash. 2012) (dismissing complaint based on differences between U.S. and Chinese filings because "the inputs and consolidation methods varied in material respects").

In addition, even if the U.S. and Chinese disclosures *had* concerned the same corporate entity, Plaintiff fails to "allege at least some facts to support that . . . any variation is not attributable to variations in reporting rules or accounting standards."  *In re China Valves Tech. Sec. Litig.*, 2012 U.S. Dist. LEXIS 130284, at *19 (S.D.N.Y. Sep. 12, 2012) (dismissing complaint based on

---

fragments from his prior complaint.  Plaintiff says ACMR had inflated profit margins (*e.g.*, ¶¶ 64, 99, 147) and unpaid inventory (*e.g.*, ¶¶ 64, 85, 99), but he deleted the relevant sections from his prior complaint.  *See* ECF 49, ¶ 142.  Plaintiff appears to have abandoned these theories.  To the extent he claims otherwise, he pleads no facts—particularized or otherwise—to support them.

[4] Plaintiff confusingly submits two different tables with different numbers that purport to show this supposed divergence.  ¶¶ 140-41.  Although Plaintiff does not specify which is the basis for his theory, Defendants' point holds for both: Plaintiff is comparing ACMR to its Chinese subsidiary.

DEFS' MOTION TO DISMISS SAC                    8
CASE NO. 3:20-CV-09241-VC

differences between U.S. and Chinese filings; plaintiff did "not allege what accounting standards, if any, are required for [Chinese] filings, [and] the similarities or differences between those standards and U.S. GAAP"). As ACMR informed investors, information disclosed to Chinese regulators would differ "due to the distinct, and potentially inconsistent, accounting standards applicable to the two companies and disclosure requirements imposed by securities regulatory authorities[.]" Ex. I at 6. Plaintiff tries to camouflage his error by asking the Court to assume that any difference must be due to a misstatement in the U.S. filings. But, as the court noted in *China Valves*, Plaintiff's supposition is no "basis for concluding that the SEC filings—and not the [Chinese] filings—are inaccurate." 2012 U.S. Dist. LEXIS 130284, at *19.

***Revenues and Profits.*** Plaintiff again repeatedly bolded and italicized Defendants' factual statements about ACMR's revenues and profits. ¶ 40 ("[r]evenue for 2018 was $74.6 million"); ¶ 73 ("[r]evenue increased 44.2% to $33.4 million"). He then repeats—with no support—that these revenues and profits were "overstated." *E.g.*, ¶¶ 43, 45, 47, 49. Plaintiff's tactic fails to satisfy his burden of pleading facts required to make an accounting claim, including "such basic details as the approximate amount by which revenues and earnings were overstated[.]" *In re Daou Sys. Inc., Sec. Litig.*, 411 F.3d 1006, 1016 (9th Cir. 2005). Notably, "Plaintiff does not point to any restatement of [ACMR's] accounting, much less any missed earnings revealing the impact of alleged accounting fraud." *Enphase Energy*, 2021 U.S. Dist. LEXIS 155188, at *12; *see also Deason v. Super Micro Comput., Inc.*, 2017 U.S. Dist. LEXIS 162978, at *5 (N.D. Cal. Sep. 29, 2017) (Davila, J.) (dismissing complaint that "d[id] not allege that Super Micro was required to issue a restatement").[5]

Lacking facts, Plaintiff again asks the Court to *assume* that ACMR's revenues and profits were "materially overstated." *E.g.*, ¶¶ 9, 47, 55. But by how much was ACMR's revenue supposedly overstated at the end of 1Q19? How about for any other quarter during the class period? How about

[5] Plaintiff also bolds and italicizes statements about ACMR's revenue guidance. ¶¶ 52, 63. To the extent Plaintiff is challenging these statements, his attempt also fails because they fall within the PSLRA's Safe Harbor. "[G]rowth and revenue projections" are "forward-looking on their face." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1058 (9th Cir. 2014). ACMR provided meaningful cautionary language. *E.g.*, Ex. J at 99.01 at 3 (warning investors that "[a]ctual results may vary significantly from ACM[R]'s expectations" for many reasons, including that "customer orders or identified market opportunities may not grow or develop as anticipated").

DEFS' MOTION TO DISMISS SAC   9
CASE NO. 3:20-CV-09241-VC

ACMR's profits?  ***The Second Amended Complaint does not attempt to provide a single answer.***  Plaintiff cannot surmount the pleadings bar imposed by the PSLRA simply by claiming that revenues and profits were "materially overstated" without any factual support.  *See McGovney v. Aerohive Networks, Inc.*, 2019 U.S. Dist. LEXIS 228702, at *37-38 (N.D. Cal. Aug. 7, 2019) (Koh, J.) (dismissing complaint; "[p]laintiffs do not quantify the severity of these problems").

 ***Customer Advances.***  Plaintiff complains that customer cash advances were higher in 2021, as compared to 2020.  ¶¶ 128-30.  This, according to Plaintiff, is proof that J Capital must have correctly speculated that ACMR was *understating* cash advances during 2020.  ¶ 130.  This allegation misses the mark by an *exceptionally* large distance for two reasons.

 First, Plaintiff assumes that because in 2021 ACMR received more cash advances, it must have been underreporting the advances it received in 2020.  Why?  ACMR has never restated its cash advances.  *Enphase Energy*, 2021 U.S. Dist. LEXIS 155188, at *12 ("Plaintiff does not point to any restatement of [defendant's] accounting").  Nor does Plaintiff plead any particularized facts to support his conjecture that growth in a company's financials somehow makes prior periods false.  He admits that he is speculating by qualifying his own conclusory allegation: "Customer advances were likely greater than what the Company reported."  ¶¶ 43, 45, 47.  Plaintiff cannot plead falsity through mere supposition.[6]  *See Harris v. AmTrust Fin. Servs.*, 135 F. Supp. 3d 155, 171 (S.D.N.Y. 2015), *aff'd*, 649 Fed. App'x 7 (2d. Cir. 2016) (dismissing complaint that "fail[ed] to include factual support for its *ipse dixit* that loss and loss adjustment expenses were misclassified").  The Ninth Circuit "has consistently held that the PSLRA's falsity requirement is not satisfied by conclusory allegations that a company's class period statements regarding its financial well-being are *per se* false based on the plaintiff's allegations of fraud generally."  *Corinthian Colls.*, 540 F.3d at 1070.

 Second, Plaintiff seems to misunderstand what cash advances are.  His (and J Capital's)

---

[6] Plaintiff does not challenge any actual statements about customer advances.  *See* ¶¶ 40-120 (no statements regarding customer advances in section titled "Materially False and Misleading Statements Issued During the Class Period").  This reason alone warrants dismissal.  *See Lu v. Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1277 (N.D. Cal. 2019) (Koh, J.) (dismissing complaint; "allegations are almost entirely untethered to the actual statements"); *Hong v. Extreme Networks, Inc.*, 2017 U.S. Dist. LEXIS 64297, at *48 (N.D. Cal. Apr. 27, 2017) (Freeman, J.) (dismissing complaint; "the reasons Plaintiffs offer as to why the statements are false or misleading bear no connection to the substance of the statements themselves").

DEFS' MOTION TO DISMISS SAC                              10
CASE NO. 3:20-CV-09241-VC

comparison of cash advances to then-current revenues (¶¶ 127-28) makes no sense.  As ACMR disclosed, its "customers generally pay in installments" and sometimes pay deposits to lock in their orders for ACMR's complex, highly customized products.  Ex. H at 48; *id.* at 16 ("the significant expenditures required to customize our products often exceed the deposits received from our customers").  ACMR does not recognize revenue on its products until they pass customer acceptance (for first-time customers of a given product) or until they are delivered (for repeat customers).  *Id.* at 56.  This process can take up to 24 months (*id.* at 22), so during that time, the payments are listed on the balance sheet as "advances from customers" (*id.* at 69), *not* revenue.  Plaintiff's confusion about ACMR's advances cannot support a claim of securities fraud.  *See Weller v. Scout Analytics, Inc.*, 230 F. Supp. 3d 1085, 1093 (N.D. Cal. 2017) (Davila, J.) (dismissing complaint; "[P]laintiff's argument is premised on a misreading . . . that is neither plausible nor reasonable.").

Not only is Plaintiff's theory incorrect, but *he is complaining about ACMR's success.*  The increase in cash advances reflects the Company's future growth.  As ACMR has received more orders and deposits over the last year, its subsequent shipments have also increased.  *See* Ex. K at 35 (ACMR's shipments increased from $45M in 2Q20 to $82M in 2Q21).  Shipments can be a leading indicator of future revenues (Ex. L at 7 (shipments include "deliveries of systems awaiting customer acceptance for potential revenue in future quarters.")), and ACMR has responded to these positive developments by *raising* its revenue guidance for FY2021.  Ex. M at Ex 99.01 at 2 ("the Company now expects revenue to be in the range of $225 million to $240 million, versus the previous guidance range of $205 million to $230 million.").  ACMR's recent growth makes perfect sense given the global shortage of computer chips[7] and the importance of ACMR's products in the manufacturing process.  Plaintiff—who held short-term options contracts, not ACMR shares—may not care about ACMR's long-term trajectory, but he cannot bring a securities fraud claim by faulting the Company's success.

***Sales Agents.***  Plaintiff repeats his conclusion that ACMR must have secretly used third-party

---

[7] *See, e.g.*, Mike Colias, *Car Companies Buckle Up For Extended Chip Shortage*, The Wall Street Journal (Sept. 30, 2021), https://www.wsj.com/articles/car-companies-buckle-up-for-extended-chip-shortage-11633005657; Don Clark, *'It's a Roller-Coaster Ride': Global Chip Shortage Is Making Industries Sweat*, New York Times (Apr. 15, 2021), https://www.nytimes.com/2021/04/15/technology/computer-chip-semiconductor-shortage.html.

DEFS' MOTION TO DISMISS SAC                     11
CASE NO. 3:20-CV-09241-VC

sales agents (¶ 131) despite the Company's lengthy disclosures about agents in its sales process.  Ex. I at Ex. 99.01 at 97, 244 ("The company mainly develops the market through agents"; "[t]he company signs a product sales agency agreement with the agent, and the agent is responsible for the marketing of related products in a specific region"; "[t]he company . . . pays the agent commission according to the type of the products it sells as an agent and the commission rate agreed in advance").  Plaintiff himself repeatedly cites ACMR's own disclosures.  For example, the tables on page 38 of the complaint are copied from ACMR's own Form 8-K, as the attribution under the tables states.  ¶ 138; Ex. I at Ex. 99.01 at 135-36.  Plaintiff cannot claim therefore that ACMR failed to disclose this same information.  *See Tadros v. Celladon Corp.*, 738 F. App'x 448, 448 (9th Cir. 2018) (affirming dismissal where allegedly omitted facts had been publicly disclosed); *McGovney v. Aerohive Networks, Inc.*, 367 F. Supp. 3d 1038, 1056 (N.D. Cal. 2019) (Koh, J.) (dismissing complaint; "Aerohive discloses exactly what Plaintiffs claim Aerohive omitted").

In addition, Plaintiff fails to plead facts that ACMR's sales agents included "undisclosed related parties."  He lifts the accusation directly from J Capital's initial *opus*, which used that phrase for pejorative effect.  Ex. B at 2.  This allegation fails for two reasons.

First, unlike J Capital, Plaintiff must provide particularized facts to support his claim that there were undisclosed related party transactions.  Although "related party" is a technical term, Plaintiff fails to provide any definition or allege facts showing how ACMR supposedly misapplied it.  *See Enphase Energy*, 2021 U.S. Dist. LEXIS 155188, at *13 (complaint "also fails to point to any accounting standard that Enphase misapplied").  Item 404 of Regulation S-K provides very specific criteria for what constitutes a related party transaction.  17 C.F.R. § 229.404.  Plaintiff does not plead facts showing that there were any undisclosed transactions that met such requirements.  In analogous circumstances, the court in *In re Hebron Technology Co., Ltd.* held that plaintiffs' failure to plead such facts meant that the "allegations in the [complaint] [we]re insufficient to establish a related party transaction."  2021 U.S. Dist. LEXIS 181162, at *35, 55 (S.D.N.Y. Sep. 22, 2021) (dismissing complaint; related party claims "all turn on the premise that the two companies were then-related parties"); *see also In re China Mobile Games & Entm't Grp., LTD Sec. Litig.*, 2016 U.S. Dist. LEXIS 29258, at *17 (S.D.N.Y. Mar. 7, 2016) (dismissing complaint; "the Complaint neither notes the

DEFS' MOTION TO DISMISS SAC                12
CASE NO. 3:20-CV-09241-VC

relationship between Ying and Du or Ying and Dan").

Second, even assuming that related party transactions were omitted, Plaintiff fails to identify any affirmative statement by ACMR that would be rendered materially false or misleading by such an omission. For example, Plaintiff fails to allege any facts showing an impact on the Company's financials, a point that the Court expressly highlighted during the motion to dismiss hearing. ECF 62 at 13:1-2 ("And what did that do to the company's numbers? How did that affect the company's revenue numbers?"). Plaintiff repeatedly claims that undisclosed related parties "inflated" the Company's revenue and profits (*e.g.*, ¶¶ 43, 45, 47), but does not identify a single transaction, allege its value, or show how it materially impacts ACMR's revenue. *See Daou*, 411 F.3d at 1016 (plaintiffs must allege "such basic details" like the amount by which revenues and earnings were overstated, transaction dates, and the identities of the customers or employees involved). His allegations "are tautologies that amount to no more than the assertion that 'these filings were false because they fail to disclose related party transactions.'" *Mendoza v. HF Foods Grp., Inc.*, 2021 U.S. Dist. LEXIS 160982, at *21 (C.D. Cal. Aug. 25, 2021) (dismissing complaint).

***Availability of Funds from Chinese Subisdiary's IPO***. Finally, Plaintiff recycles his theory that ACMR purportedly did not warn U.S. investors that they would not be able to access the capital raised in the IPO of ACMR's Chinese subsidiary. ¶¶ 114-15, 159. Plaintiff forgets that the Court previously rejected this theory, noting that the "benefits" to the Company "appear to be something different from drawing dividends from the Shanghai subsidiary." *See* ECF 62 at 7:17-20. Plaintiff again fails to identify any statements by defendants that funds from the Shanghai IPO would be available to U.S. investors. On the contrary, the Company disclosed that U.S. investors would be unlikely to access funds raised by the offering. Ex. H at 16 ("Under existing [Chinese] laws and regulations, it may be difficult, if not impossible, for ACM[R] to be able to receive dividends comprised of funds generated by" the subsidiary's IPO). Nor does Plaintiff allege that investors expected dividends, given that ACMR had "never declared or paid cash dividends" and did "not expect to declare or pay any dividends in the foreseeable future." *Id.* at 37. Plaintiff cannot claim information was omitted when it was, in fact, publicly disclosed. *See Celladon*, 738 F. App'x at 448; *Aerohive Networks*, 367 F. Supp. 3d at 1056.

### III.    PLAINTIFF AGAIN FAILS TO ALLEGE LOSS CAUSATION

Plaintiff also fails to supplement his loss causation allegations.  The latest complaint "lack[s] specific facts indicating that the decline in the defendant's stock price was proximately caused by a revelation of fraudulent activity rather than by changing market conditions, changing investor expectations, or other unrelated factors." *Cunningham v. Identiv, Inc.*, 716 F. App'x 663, 664 (9th Cir. 2018) (affirming dismissal).   Plaintiff does not dispute that ACMR's stock price was highly volatile throughout 2020 compared to the market generally, as reflected in the following chart.



*See* Ex. E.

The minor stock drops on October 8, 2020 (-1.52%) and November 17, 2020 (-4.93%), were within the norm of day-to-day volatility in ACMR's stock price.  ECF 50 at 14.  Plaintiff does not show that the stock variability was out of the ordinary and does not allege that the declines were even statistically significant.  This is a telling omission: as Plaintiff's knows, this lawsuit cannot proceed if there are no damages.  As Plaintiff's expert must have informed his counsel, with neither stock drop being statistically significant, there can be no recovery for the putative class Plaintiff seeks to certify.

Plaintiff attempts to plead his way around these deficiencies by asking the Court to *assume* causation, admitting that the October drop was due to "investors' well-founded pessimism" (¶ 144) and the November drop merely "follow[ed] the publication of J Capital's update[.]"  ¶ 164.

DEFS' MOTION TO DISMISS SAC                    14
CASE NO. 3:20-CV-09241-VC

Crafty pleading of this sort is unavailing: "[t]he Ninth Circuit has held that, as with other elements of a securities fraud claim, plaintiffs must plead loss causation with the particularity required by Federal Rule of Civil Procedure 9(b)." *Lopes v. Fitbit, Inc.*, 2020 U.S. Dist. LEXIS 52187, at *13 (N.D. Cal. Mar. 23, 2020) (Tigar, J.), *aff'd* 848 Fed. App'x 278 (9th Cir. 2021) (dismissing complaint). Plaintiff fails to "allege facts from which the Court may draw an inference that Defendants' allegedly fraudulent conduct was a *substantial* cause of his loss[.]" *Eng v. Edison Int'l*, 2018 U.S. Dist. LEXIS 43629, at *6-8 (S.D. Cal. Mar. 16, 2018) (emphasis in original) (dismissing complaint; plaintiff cannot "simply allege a defendant's stock price declined; the decline in stock price must be 'statistically significant'"). The complaint does not allege any particularized facts "show[ing] that the revelation of that misrepresentation or omission was a substantial factor in causing a decline in the security's price." *Mulquin v. Nektar Therapeutics*, 510 F. Supp. 3d 854, 870 (N.D. Cal. 2020) (Gilliam, J.) (dismissing complaint for failure to plead loss causation).

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be granted.[8] This was Plaintiff's third attempt to assert a claim. He failed. Dismissal should be with prejudice.

Dated: October 21, 2021            Respectfully submitted,

FRESHFIELDS BRUCKHAUS DERINGER US LLP

By: /s/ *Boris Feldman*
     Boris Feldman

*Attorneys for Defendants*

---

[8] Because Plaintiff's 10(b) claim fails, so does his 20(a) claim. *See, e.g.*, *In re Align Tech., Inc. Sec. Litig.*, 2021 U.S. Dist. LEXIS 59783, at *24 (N.D. Cal. Mar. 29, 2021) (Chesney, J.) ("plaintiff has failed to state a claim under § 10(b) or Rule 10b-5, and, consequently, such failure precludes plaintiff from stating a claim under § 20(a)"). In addition, to the extent Plaintiff purports to assert scheme liability under Rule 10b-5(a) or (c) (¶ 183), this fails because Plaintiff does not attempt to allege fraud independent of a misrepresentation or omission. *See Nektar Therapeutics*, 2020 U.S. Dist. LEXIS 122715, at *40 ("scheme liability claim cannot be based solely on false or misleading statements").

DEFS' MOTION TO DISMISS SAC                    15
CASE NO. 3:20-CV-09241-VC