UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY KAIN,<br><br>        Plaintiff,<br><br>    v.<br><br>ACM RESEARCH, INC., et al.,<br><br>        Defendants. | Case No. 20-cv-09241-VC<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 64, 66 |

        The defendants' motion to dismiss is granted.[1] Kain has not alleged a material misstatement or omission relating to any of the five theories outlined in the motion to dismiss and opposition. Indeed, the fact that the Court had to resort to identifying possible theories of securities fraud from the parties' motions, rather than from the complaint itself, is the first sign the complaint is materially deficient.

        The complaint is a series of allegations "predicated on the [J Capital Reports'] insistence that [ACM's] financial reporting does not add up." *Hurst v. Enphase Energy, Inc.*, 2021 WL 3633837, at *4 (N.D. Cal. Aug. 17, 2021). But those vague allegations, without more, do not meet the PSLRA's heightened standard for alleging securities fraud. *See Metzler Investment GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008) ("A litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those

---

[1] The corresponding request for judicial notice is granted in part and denied as moot in part. The J Capital reports, Exhibits B and G, are incorporated into the complaint by reference. The SEC filings in Exhibits A, F, H, I, J, K, and M are public documents that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). And the Court had no need to consider Exhibits C, D, E, and L to resolve this motion.

statements were false, does not meet [the PSLRA's] standard.").

1. The fact that ACM's revenue doubled over the course of a year but its advances remained flat does not contradict or render misleading any statement identified in the complaint. Even if it was clear which statement was being challenged, the complaint provides no reason to find any relation between current revenues and cash advances.

2. Concerning the related-party transactions, the complaint fails to correct the deficiency the Court previously identified: it does not explain how the non-disclosure of those transactions financially impacted the stock price. Stating without further explanation that the non-disclosures resulted in materially overstated revenues and profits is conclusory and therefore inadequate.

3. The complaint's allegation that ACM's cash balance was misrepresented to the public, purportedly evidenced by the difference in the balances listed in the STAR IPO and SEC filings, is insufficient to plead a material misstatement or omission because it is based on an apples-to-oranges comparison. The STAR IPO filings only contain the financial information of ACM's Chinese subsidiary. But ACM's SEC filings report the financials of ACM and *all its subsidiaries*. So naturally, the SEC filings would reflect a higher cash balance than the STAR IPO filings. *See In re China XD Plastics Company Limited Securities Litigation*, 2016 WL 1241522, at *5–6 (S.D.N.Y. Mar. 23, 2016). But even if this comparison was appropriate, the complaint fails for another reason: it does not explain why the purported discrepancy is not attributable to variations in the reporting rules and accounting standards in the United States and China. *See In re China Valves Technology Securities Litigation*, 979 F. Supp. 2d 395, 411–12 (S.D.N.Y. 2013).

4. The complaint also fails to allege particularized facts showing that ACM's reported cash balances were overstated. In one or two places in the complaint, Kain alleges a specific amount by which the cash balances were overstated but the complaint does not explain how those numbers were derived. The complaint's primary theory, it

appears, is that ACM's assumption of debt, including 15 lines of credit, 11 of which were personally guaranteed by the CEO, made the existence of a large cash reserve unlikely. But those allegations are pure speculation unsupported by facts. A company's choice to finance its operations with debt, instead of with its existing cash reverses, does not mean that its reported cash balances are false. And at least some of those credit lines were disclosed in public filings during the class period. Drawing different conclusions about ACM's financial state from the information it made publicly available does not surmount the PSLRA's high pleading bar. *Hurst*, 2021 WL 3633837, at *4.

5. The complaint's allegation that U.S. shareholders were misled into believing they could access funds from the Chinese subsidiary, which generates a lion's share of the company's operating income, also fails to state a claim. In its Form 10-K filing for the fiscal year ending December 31, 2019, ACM disclosed that "it is unlikely that funds raised or generated by ACM Shanghai will be readily distributable to" ACM shareholders. And in fact, shareholders did not expect to receive dividends from the Chinese subsidiary at all. The same public filing indicated that ACM had never paid cash dividends and did not intend to in the foreseeable future.

Even if Kain had alleged a material misstatement or omission, he has likely not alleged scienter. The core operations doctrine could potentially apply to some of the theories of securities fraud identified in the motions. *See Berson v. Applied Signal Technology, Inc.*, 527 F.3d 982, 987–89 (9th Cir. 2008). But that theory of scienter is advanced only in Kain's opposition to the motion to dismiss; it is not adequately alleged in the complaint. And the scienter allegations that are present in the complaint are plainly insufficient to survive a motion to dismiss.

Finally, it is questionable whether Kain sufficiently alleged loss causation given the relatively miniscule fluctuations in the stock price after the alleged disclosures. *See Eng v. Edison International*, 2018 WL 1367419, at *5 (S.D. Cal. Mar. 16, 2018) (requiring allegations

3

that the drop in the stock price was statistically significant). *But see Steiner v. MedQuist Inc.*, 2006 WL 2827740, at *19–20 (D.N.J. Sept. 29, 2006) (requiring only that the stock price was negatively affected by the disclosure). But this issue need not be resolved now given the complaint's more obvious deficiencies.

Given the failings of the last two complaints and the minimal changes made after the last motion to dismiss, the Court is skeptical that Kain is capable of stating a claim in this case. But because the complaint could theoretically be amended to state a viable claim, the motion to dismiss will be granted with leave to amend.

An amended complaint is due 21 days from the date of this order. The defendants must respond within 21 days of the filing of the amended complaint.

**IT IS SO ORDERED.**

Dated: December 20, 2021

_____
VINCE CHHABRIA
United States District Judge